Freeman, J.,
delivered the opinion of the Court.
This is a bill filed in the Chancery Court at Blount-ville, to remove a cloud on the title to about 113 acres of land. The bill was demurred to, demurrer sustained by the Chancellor, and the bill dismissed; from which decree complainant prosecutes a writ of error to this Court.
The facts stated in the bill, material to be noticed, are, that Talbot obtained three judgments before a Jus *409 tice of the Peace, for Sullivan County, in August, 1860, against one Rutledge, as principal, and James D. Rhea, as security; each for the sum of $345.78 and costs; that on the 11th day of January, 1862, executions on these judgments were levied on 113 acres of land, of the said security, Rhea. The papers in the cases, were sent up to the Circuit Court of Sullivan County, by the justice, for condemnation of the land, at the March Term, 1866, when an order of condemnation was entered and a vendi-tioni exponas issued, under which the land was sold on the 14th of July, 1866, and purchased by Talbot, he bidding the amount of his debt and costs.
On the 27th of October, 1862, complainant, Anderson, purchased 300 acres of land from the said surety, Rhea, including the 113 acres levied on, and on the 4th of December, 1862, his deed for the same was registered and ho -went into possession of the land under his purchase, and has remained in possession, up to the filing of this bill.
Complainant alleges that he supposes said Talbot holds the Sheriff’s deed for said tract of land; and he fears his possession will be disturbed by him. He prays that the cloud be removed from his title, and that he be quieted in his possession, with a prayer for such other and different relief as he may be entitled to.
The first question presented for our consideration is, does the bill allege such a case as will authorize a court of equity to interpose to remove the cloud on the title of complainant’s land. While the allegations of the bill on this question are not very specific or strong, yet upon the whole facts as stated, we think, admitting them to be *410 true, as the demurrer does, the complainant has made out a case entitling him to relief.
It is held, in this State, that a bill will lie to remove a cloud upon a title, and declare a deed which constitutes that cloud void, and have the same cancelled, whether its character as such, appear from the face of the instrument or not. Jones v. Perry, 10 Yerg., 83; 3 Head., 40; 1 J. C. R., 522.
A bill to remove a aloud, is a head of equity by itself. It will lie, although the defendants are in possession, and complainants have the legal title, and might sue at law for recovery of the property, that not being esteemed adequate relief. 3 Head., 42; 2 Yerg., 524; 10 Yerg., 59, 83.
The principle here stated is, that the relief granted is not dependent upon the fact that the party seeking it has the legal title, and may successfully maintain or assert it in a court of law. The principle on which this head of equity rests, is that of quia limet, and is thus stated by Mr. Willard, in his work on Equity Jurisprudence: “Where a person is apprehensive of being subjected to future inconvenience, probable or even possible to happen, by neglect, inadvertence or culpability of another; in such case, the Court will grant the party relief; quieting his apprehension of future inconvenience, by removing causes which may lead to it.” Will. Eq. Jur., 303.
A sound application of the above principles, we hold, will entitle the complainant, under the facts of this case, to maintain his bill to remove the cloud from his title, provided the title shown to be in, or claim of, defend *411 ant be an invalid title, or an unsupported claim of right, in the view of a court of equity. Is the levy and sale under which defendant claims in this case a valid title, or does it give him any right or claim to the land in controversy?
We have given a careful examination to the question, so far as we could do so from the authorities furnished us, and such other authorities as we could obtain, and we hold that the levy of complainant was abandoned, and ceased to be operative as a lien on the land in controversy, by reason of the laches of the defendant in asserting his rights under the same, which, if not asserted at the time prescribed by Code, 3080, at the next term of court after return of execution levied, at any rate ought to be done within a reasonable time thereafter.
It is the policy of our law to discourage secret liens, as against innocent purchasers and creditors; and when such liens are given, as in the case of levy of execution, from a Justice of the Peace, the party should not be permitted to rest upon his legal right, keep the fact of the lien secret for an indefinite time, and then come forward and assert it, as against the rights of parties who have innocently paid their money for the property.
In the case of execution on personalty the rule is settled, that “if the goods are permitted to remain in the debtor’s possession for an unreasonable length of time, or if the creditor, desiring to favor the debtor, instruct the officer to delay and not to proceed with the execution, the goods remaining in the debtor’s pos-sesion and use, the execution would be deemed fraudu *412 lent as to creditors and purchasers. Etheridge et als v. Edwards, 1 Swan, 429; Roberts v. Scales et als, 1 Ire. L. R., 90.
We will not undertake to define what is an unreasonable time to delay sale under execution; but in view of the requirements of the law, that in case of levy on real estate, by execution based on Justice’s judgment, the Justice shall return the papers to the next term of the Circuit Court, which Court is to condemn the land and make an order of sale at said term, which the sheriff would be required to execute and return by the next succeeding term; we think that delay from January, 1862, to March Term, 1866, is an unreasonable time for the creditor to sleep upon his rights under his levy.
It has been insisted that the war intervened, and ' Courts were closed. • "We can not judicially say when the Courts in Sullivan county were closed, as Courts were held open in some portions of the State much longer than in others, and were never closed by any authority. This is a fact, which, however, may have a very material influence on the result in this case, on the hearing on the proof after answer. We can at present, however, only decide on the the facts presented on the face of the bill.
We can, however, judicially know when our Courts were reopened, as it is a part of the history, and one of the acts of, our State government. We know that the first Circuit Court was held in July, 1865, again in November, and that March Term, 1866, was the third regular term of the Court after the war.
*413 This delay of defendant after the opening of. the courts of the country, forms a material consideration for the conclusion we have reached in this case.
So far as it appears to us, there may have been several terms of the Circuit Court of Sullivan county in 1862, after the levy of the executions in this case. The defendant ought to have made some effort to continue and effectuate his lien, if such courts were held. He might have had the papers returned to court, where the case would have been docketed,, and bemg in the nature of a proceeding in ran against the specified property described in the levy, it would have had the effect of a lis pendens in a court of record, and have been notice of his lien to all who might purchase the land. We hold, therefore, that the ■ delay and laches shown by the facts in this case, unexplained, except by the fact of the existence of the war, is, as against an innocent purchaser, for valuable consideration, evidence of abandonment of lien, if not of fraud, and that a title obtained by sale of the land under such levy, in the hands of the plaintiff in the execution, can not be allowed to prevail in a court of equity.
It has been insisted by counsel that this is not a case for the action of a court of equity in removing a cloud from the title of complainant, because he is in possession of the land, and time will strengthen, not weaken, his title. We, however, think that a levy on land of a party, a sale, after condemnation by a circuit court, under order of said court, and purchase by the plaintiff in the execution, and sheriff’s deed for the same, as we are bound to presume the sheriff has done *414 his duty in the case as the law directs, is such an apparent title or claim to the land, as furnish a ground for an appeal to a court of equity to remove the cloud thus impending over the title of an innocent purchaser, and that he has the right to ask that this apparent title be declared void.
Such a claim is one that would seriously affect the value of the land in the market, would hinder its sale, if not entirely prevent its being sold for its full value, as no one would desire to purchase a law suit; and the party holding land under such circumstances, might well have reasonable grounds for apprehension of future inconvenience and injury, and ask the court to quiet, and clear up, what the court sees to be, a good and valid title.
As to the question made in the bill, that the levy is void, because not showing that there was “no property, real or personal, of the principal, to he found, on which to levy,” before levying on property of surety, we think, there is nothing in this of which complainant can take advantage.
The statute is directory to the sheriff, and is for protection of the surety. If he submits to it, no one else can be heard to complain.
Upon the whole, we conclude the demurrer was improperly allowed; and we reverse the decree of the Chancellor, and remand the cause to be further proceeded in.